**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| v. | : C. A. No. 10-354-LPS-MPT |
| BACARA PARTNERS, LLC; LARRY MANTH; MICHAEL ROSENBLUM; VICTORIA TAN; SPINNERET FINANCIAL SOLUTIONS, LLC; ALFRED HAHNFELDT; and JOSEPH GAGLIARDI, | : |
| Defendants | : |

**REPORT AND RECOMMENDATION**

**I.    Introduction**[1]

Defendant Bacara Partners, LLC ("Bacara"), is a Nevada limited liability company with its principal place of business in Carson City, Nevada. Defendants Larry Manth ("Manth"), Michael Rosenblum ("Rosenblum"), Victoria Tan ("Tan"), and Spinneret Financial Solutions, LLC ("Spinneret") (collectively "defendants") hold equity interest in Bacara. Defendant Alfred Hahnfeldt ("Hahnfeldt") is the sole owner of Spinneret. Medical Wind Down Holdings I, Inc. ("MWDH I") is the bankrupt-dissolved entity to whom the IRS allegedly issued an erroneous refund of taxes.

On February 11, 2003, MWDH I and its subsidiaries filed voluntary Chapter 11 bankruptcy petitions in the United States Bankruptcy Court for the District of Delaware. On March 13, 2003, the debtors filed assets schedules, listing the current value of liquidated debts, including tax refunds, owed to each debtor at zero. On November 10,

---

[1] Unless otherwise indicated, all facts are taken from the complaint.

2003, through a court approved sale, substantially all assets of the bankrupt estates were sold, and MWDH I ceased conducting business.

On September 8, 2005, nearly two years after the debtors sold substantially all their assets, MWDH I petitioned the bankruptcy court seeking approval to sell Bacara its "right, title and interest" in certain assets in exchange for $77,500; the bankruptcy court approved the sale the following day, September, 9, 2005. This sale included "'claims' for 'uncollected accounts receivable . . . [and] . . . copies of books and records owned by the Estate and specifically relating to [accounts receivable].'"[2] Although the bankruptcy court order approving the sale excluded certain state and local tax claims, no mention was made of the federal tax refund at issue. On March 22, 2006, MWDH I ceased to exist by way of a merger with Medical Wind Down Holdings, Inc. III ("MWDH III").

On August 18, 2006, Hahnfeldt filed Form 1120X for "Amended U.S. Corporation Income Tax Return," which stipulated that MWDH I should receive a refund for a Net Operating Loss ("NOL") in the amount $72,441,457.00 incurred during the tax year 2002. Hahnfeldt represented himself on Form 1120x to be the Chief Financial Officer ("CFO") of MWDH I. The refund related to overpayment of federal income taxes by MWDH I during the tax year 1993, a potentially valid federal tax refund under 26 U.S.C. § 7405. The form did not advise that MWDH I had liquidated its assets in bankruptcy, ceased business operations and had been acquired by MWDH III. The form also did not advise of the zero or near zero valuation of assets, including potential federal

---

[2]D.I. 1 at 5.

Case 1:10-cv-00354-LPS-MPT   Document 31   Filed 01/10/11   Page 3 of 14 PageID #: 551

refunds, by the debtors in their bankruptcy schedules and motion for approval of sale.

The IRS issued the refund on October 3, 2006, which was sent to Joseph Gagliardi ("Gagliardi") who is the CFO of record for MWDH I. The address was a post office box registered to MWDH I and in control of Gagliardi, making it appear that MWDH I filed the claim for refund and received the refund check. Gagliardi then had the tax refund forwarded to Bacara.

### A.   Procedural Background

On April 28, 2010, the United States filed the present action against Bacara and the other defendants to recover an erroneous refund of federal taxes and interest paid to MWDH I. Counts I-III of the complaint allege that: (1) the 1120X form is invalid pursuant to 26 U.S.C. § 7405; (2) the assignment of "claims" contravened the Anti-Assignment Act pursuant to 31 U.S.C. § 3727, and; (3) the refund included unsubstantiated "specified liability losses" pursuant to 26 U.S.C. § 172(b)(1). On July 16, 2010, Bacara filed the present motion to dismiss counts I-III pursuant to Rule 12(b)(6)[3] for failure to state a claim upon which relief can be granted. This is the only motion under consideration in this Report and Recommendation.[4]

### B.   Legal Standard

An analysis for a Rule 12(b)(6) motion to dismiss must include a review of Rule 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." That standard "does not require 'detailed

---

[3] Fed. R. Civ. P. 12(b)(6).
[4] A similar motion to dismiss was filed by Gagliardi, which will be addressed in a separate Report and Recommendation. *See* D.I. 8.

factual allegations,' but . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[5] Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[6] The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[7] Evaluating a motion under Rule 12(b)(6) requires the court to accept as true all material allegations of the complaint.[8] "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[9] A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[10]

To survive a motion under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[11] A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief'" beyond "labels and

---

[5] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[6] *Id.*, citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6).
[7] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[8] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).
[9] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).
[10] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).
[11] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

conclusions."[12] Heightened fact pleading is not required; rather, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[13] The plausibility standard does not rise to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully."[14] Rejected are unsupported allegations, "bald assertions," or "legal conclusions."[15] Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[16] Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss," which is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[17] Thus, well-pled facts which only infer the "mere possibility of misconduct," do not show that "' the pleader is entitled to relief,'" under Rule 8(a)(2).[18] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."[19]

Under Rule 9(b), when a plaintiff alleges fraud and misrepresentation by a defendant, the complaint must "state with particularity the circumstances constituting

---

[12] *Twombly*, 550 U.S. at 555.
[13] *Id.* at 570.
[14] *Iqbal*, 129 S. Ct. at 1949.
[15] *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *Schuylkill Energy Res., Inc. v. Pa. Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self-evidently false" are not accepted).
[16] *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").
[17] *Id.* at 1950.
[18] *Id.*
[19] *Id.*

fraud or mistake."[20]  Therefore, the United States is required "to plead with particularity the 'circumstances' of alleged fraud."[21]  The particularity requirement, however, does not mandate that a party plead the date, time, or place of the alleged fraud, if that party uses "an alternative means of injecting precision and some measure of substantiation into [its] allegations of fraud."[22]  Thus, "courts still must apply Rule 9(b) with some flexibility so that a party is not required to plead issues which may have been concealed by an adverse party."[23]

### C. Positions of the Parties

Bacara argues that its motion to dismiss for failure to state a claim should be granted because procedural protections bar counts I-III, specifically that:  (1) the Anti-Assignment Act, 31 U.S.C. § 3727, does not apply to assignment of claims against the government which occur by operation of law;  (2) the two-year statute of limitations under 26 U.S.C. § 6532(b) bars recovery of an erroneous tax refund; and (3) the preclusive effect of res judicata and collateral estoppel bar an attack on the order of the bankruptcy court.

Bacara argues that the transfer of the tax refund claim is not subject to the Anti-Assignment Act and the challenge of the tax refund is a collateral attack on the bankruptcy court order precluded by res judicata and collateral estoppel.  Specifically,

---

[20] Fed. R. Civ. P. 9(b).
[21] *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984).
[22] *Martek Biosciences Corp. v. Nutrinova Inc.*, 2004 WL 2297870, at *3 (D. Del. Oct. 8, 2004).
[23] *Mars Inc. v. JCM Am. Corp.*, 2006 WL 1704469, at *5 (D.N.J. June 14, 2006) (citing *Rolo City Investing Co. Liquidation Trust*, 155 F.3d 644, 658 (3d Cir. 1998).

Bacara notes that the "U.S. chose not to oppose the motion, seek reconsideration of the Order, move to stay it, or appeal it." Bacara also maintains that the United States is time-barred from pursuing a collateral attack on the bankruptcy order. Bacara further contends that even if the Anti-Assignment Act is applicable, the Act is preempted by 11 U.S.C. § 1123(a)(5)(D).[24]

The United States alleges that the operation of law exemption of the Anti-Assignment Act is inapplicable to the facts and circumstances of this case; the two-year statutory bar is inapplicable because misrepresentation functions to extend the limitations period to five-years; and, res judicata and collateral estoppel are inapplicable because this litigation involves legal issues not previously adjudicated, and Bacara, as the moving party, has not proven that either preclusive bar applies.

The United States alleges that the assignment or receipt of the corporate tax refund filed by Bacara violates the Anti-Assignment Act, pursuant to 31 U.S.C. § 3727, and that such assignment is "voidable by the United States at will."[25] Moreover, it counters that the claim for the return of an erroneous refund is not time-barred and mere negligence is sufficient evidence of misrepresentation to avoid dismissal at the pleading stage. The United States also notes that although the elements of res judicata and collateral estoppel do not apply here, Bacara failed to prove that either bar applies.

## II.     Analysis

A motion to dismiss pursuant to Rule 12(b)(6) is not granted where the non-

---

[24] "Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for the plan's implementation, such as . . . sale of all or any part of the property of the estate." 11 U.S.C. § 1123(a)(5)(D).
[25] See 31 U.S.C. § 3727.

moving party asserts well-pleaded facts to support a plausible claim for relief. Furthermore, such a motion does not evaluate the merits of the asserted claims. Therefore, this report and recommendation simply addresses the sufficiency of counts I-III in determining whether dismissal is appropriate.

Pursuant to 9(b), the United States must allege with particularity the circumstances of any alleged fraud or misrepresentation.[26] The United States has met Rule 9(b) requirements because it alleged, and Bacara concedes, that the amended tax return filed on behalf of Bacara was signed by Hahnfeldt who misrepresented his position as the CFO of MWDH I. This misrepresentation of authority to sign the disputed tax return is sufficient to fulfill the requirements of Rule 9(b).

The court recommends that Bacara's motion be granted as to count II because the claim is insufficient in light of established federal law, and be denied as to counts I and III. Count I and III survive because the United States pled adequate facts, consistent with the elements of 26 U.S.C. § 7405, to support its claim to recover an erroneous refund, specifically the corporate return in question included a material misrepresentation because it must be executed "by the president, vice-president, treasurer, assistant treasurer, chief accounting officer, or any other officer *duly authorized* to so act."[27]

The United States alleges that Hahnfeldt signed the amended tax return, 1120X, as CFO even though he held no such position with MWDH I: "[n]ext to his signature on the Form 1120X, Hahnfeldt listed his title as "C.F.O" of MWDH I. On information and

---

[26] Fed. R. Civ. P. 9(b); *see* 26 U.S.C. § 6062.
[27] *See* 26 U.S.C. § 6062 (emphasis added).

Case 1:10-cv-00354-LPS-MPT   Document 31   Filed 01/10/11   Page 9 of 14 PageID #: 557

belief, Hahnfeldt did not actually hold the C.F.O title–nor any other corporate title–with MWDHI."[28] Bacara concedes that, "Mr. Hahnfeldt filed, as 'CFO,' a claim for refund in the form of an amended income tax return in the name and on behalf of MWDH I and subsidiaries."[29]

Bacara argues that it is neither material nor improper for Hahnfeldt to have signed the return, that the U.S. has not alleged facts showing Hahnfeldt did not have authority to execute the form, and that using MWDH I to apply for the refund does not imply fraud or misrepresentation.[30] Bacara maintains that the signature requirements under 26 U.S.C. § 6062 on an amended return "are not 'required to be made,' but are accepted by the IRS solely as a matter of administrative policy."[31] This argument is without merit.[32] Bacara is not the same entity as MWDH I and Hahnfeldt is neither the CFO of MWDH I or Bacara, nor has any apparent authority to act on behalf of MWDH I as required under the statute.

26 U.S.C § 6062 requires that a corporate tax return be signed by certain officers or employees. It is undisputed that Hahnfeldt neither held one of the statutory positions nor was he an employee of MWDH I. Therefore, the facts alleged in the complaint, which must be viewed as true, are sufficient to show that Hahnfeldt misrepresented his

---

[28] D.I. 1 at 6.
[29] D.I. 9 at 11.
[30] D.I. 9 at 11; D.I. 28 at 13-14.
[31] D.I. 28 at 13; see 26 U.S.C. § 6402; *Dover Corp. v. Comm'r.*, 148 F.3d 70 (2d Cir. 1998).
[32] *See Dover Corp.*, 148 F.3d 70 (2d Cir. 1998) (holding that 26 U.S.C. § 6402 "generally permit a corporate taxpayer to claim a refund by filing an amended return claiming an overpayment and then to make an election to treat such overpayment as a credit to be applied against its estimated tax liability for a succeeding taxable year.").

position on the amended tax return form.

### A. Statute of Limitations

The initial legal issue is whether the two year or five year limitation period under 26 U.S.C. § 6532(b) operates. Section 6532(b) is the limitation period applicable to actions by the government for recovery of erroneous refunds made under 26 U.S.C. § 7405. Subsection (b) provides, in part, that: "such suit may be brought at any time within 5 years from the making of the refund if it appears that any party of the refund was induced by fraud or misrepresentation of material fact."[33] "Statutes of limitations sought to be applied to bar rights of the government, must receive a strict construction in favor of the government."[34] The meaning of misrepresentation in § 6532(b) does not require a culpable state of mind; mere negligence may be sufficient to avoid dismissal at the pleading stage.[35] Therefore, misrepresentation does not equate to intentional deception.[36]

In an action to recover erroneous refunds, the government is provided additional time to investigate a material misrepresentation.[37] The statute of limitations pursuant to

---

[33] 26 U.S.C. § 6532(b).
[34] *See Badaracco v. Comm'r.*, 464 U.S. 386, 392 (1984) (quoting *Lucia v. U.S.*, 474 F.2d 565, 570 (5th Cir. 1973)).
[35] *See e.g., U.S. v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004); *U.S. v. Southland Oil Co.*, 339 F. Supp. 2d 764, 766-7 (S.D. Miss. 2004) ("Defendant need not have 'committed' fraud or have fraud 'imputed' to it for the Government to have the benefit of the longer period to investigate and recover erroneous refunds.").
[36] *See N. Trust Co.*, 372 F.3d at 889; *Lane v. U.S.*, 286 F.3d 723 (4th Cir. 2002).
[37] *Lane v. U.S.*, 286 F.3d 723 (4th Cir. 2002) ("One way to understand § 6532 as a whole might be that, when the return discloses enough that all the IRS has to do is check the calculations and apply the law, the period of limitations is two years; but if the IRS must independently discover facts that contradict the return, then it has an extra three years to do the legwork.").

26 U.S.C. § 6532(b) is two years, which may be extended to five years upon a showing fraud or misrepresentation of material fact.[38] Here, Hahnfeldt's representation as the CFO of MWDH I on the Form 1120X raises a plausible claim of a material misrepresentation, thereby making the five year limitations period to investigate a tax refund applicable.

### B. Res Judicata and Collateral Estoppel

At this stage of the proceedings, Bacara has not shown that either res judicata or collateral estoppel apply. Res judicata and collateral estoppel, respectively claim and issue preclusion, are affirmative defenses under Rule 8(c), requiring the asserting party to prove either bar applies.[39] For the claim preclusive effect of res judicata to operate, the asserting party must show "that there has been (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action."[40] The issue preclusive effect of collateral estoppel requires that "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior

---

[38] *See e.g., U.S. v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004); *U.S. v. Southland Oil Co.*, 339 F. Supp. 2d 764, 766-7 (S.D. Miss. 2004).

[39] *See e.g., U.S. v. Athlone Indus., Inc.*, 746 F.2d 977 (3d Cir. 1984); *Davis v. U.S. Steel Supply.*, 668 F.2d 166 (3d Cir. 1982) (en banc), *cert. denied*, 460 U.S. 1014 (1983); *Washam v. J.C. Penney Co.*, Inc., 519 F. Supp. 554, 559 (D.Del. 1981).

[40] *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 946-947 (D.C.Cir. 1983) (citing *Parklane Hosiery Co. v. Shore.*, 439 U.S. 322, 326 n. 5 (1979)); *Bd. of Trs. of Trucking Emps. of North Jersey Welfare Fund, Inc. v. Centra.*, 983 F.2d 495, 504 (3d Cir. 1992);

action."[41]

In the instant case, res judicata is inapplicable because no prior final adjudication on the merits occurred on the present dispute between the United States and Bacara, that is, the propriety of the claim for the federal tax refund. Collateral estoppel does not operate because the same issue in dispute, whether a tax refund was improperly obtained, was not previously adjudicated. Here, a clear distinction exists between the sale of assets authorized under a bankruptcy order and the misrepresentation alleged to obtain the federal tax refund. Bacara's argument which commingles these distinct and different issues is misplaced.

    **C.**    **The Anti-Assignment Act:**

The purpose of the Anti-Assignment Act is to prevent fraud against the United States Treasury by precluding payment of improper or multiple claims against it.[42] Bacara's motion should be granted on count II because it is through an order of the bankruptcy court that potential claims for federal tax refunds were assigned and not through a "voluntary transfer." The Anti-Assignment Act does not apply to transfer of claims that occur as an operation of law or under an order of a bankruptcy court.[43] In *U.S. v. Aetna Cas. & Surety Co,*[44] the Supreme Court held that the Anti-Assignment Act

---

    [41] *Howard Hess Dental Lab. Inc. v. Densply Intern., Inc.*, 602 F.3d 237 (3d Cir. 2010) (quoting *Szehinskyj v. Attorney Gen. of the U.S.*, 432 F.3d 253, 255 (3d Cir. 2005)).
    [42] *See U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 373 (1949).
    [43] *Western Pac. R.R. Co. v. U.S.*, 268 U.S. 271 (1925); *see e.g., Erwin v. U.S.*, 97 U.S. 392, 397 (1878), *Hager v. Swayne*, 149 U.S. 242, 247 (1983), *Butler v. Goreley*, 146 U.S. 303, 311-12 (1892), *U.S. v. Shannon*, 342 U.S. 288, 292 (1952), *In re Pottasch Bros. Co.*, 11 F. Supp. 275, 277 (D.N.Y. 1935), *In re Gerstenzang*, 5 F. Supp. 904, 905 (D.N.Y. 1933).
    [44] *U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 373 (1949).

"[does] not include a transfer by operation of law, or in bankruptcy" because such transfers do not frustrate the purpose of the Act.[45]

Here, the bankruptcy court approved the sale of MWDH I's remaining assets, which included potential tax refund claims against the government. That order precludes the application of the Anti-Assignment Act.[46] Thus, as a matter of law, the government is not entitled to relief under the Anti-Assignment Act, requiring dismissal of count II. In light of this finding that the Anti-Assignment Act is inapplicable, the court need not consider whether this Act is preempted by 11 U.S.C. § 3727.

In conclusion, because neither the statute of limitations under 26 U.S.C. § 6532(b) nor res judicata and collateral estoppel bar the government's claims, counts I and III should not be dismissed. Count II should be dismissed because the Anti-Assignment Act is precluded by operation of the bankruptcy court order

### III. Order and Recommended Disposition

For the reasons stated herein, this Court recommends that:

(1) Defendant Bacara's motion to dismiss (D.I. 6) as to counts I and III be denied, and granted as to count II.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report

---

[45] *Aetna Cas. & Sur. Co.*, 338 U.S. at 376.
[46] *See e.g.*, *Erwin v. U.S.*, 97 U.S. 392, 397 (1878) (holding that the Anti-Assignment Act did no apply to "transfers by operation of law, or by will, in bankruptcy"); *U.S. v. Aetna Cas. & Sur. Co.*, 338 U.S. at 375.

and Recommendation.[47] The objections and response to the objections are limited to ten (10) pages each.

The parties are directed to the Court's standing Order in Non Pro Se matters for Objections Filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date: <u>January 10, 2011</u>            <u>/s/ Mary Pat Thynge</u>
                                            United States Magistrate Judge

---

[47] Fed. R. Civ. P. 72(b)