**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.:10-354-LPS-MPT |
| | : | |
| BACARA PARTNERS, LLC; LARRY | : | |
| MANTH; MICHAEL ROSENBLUM; | : | |
| VICTORIA TAN; SPINNERET FINANCIAL | : | |
| SOLUTIONS, LLC; ALFRED HAHNFELDT; | : | |
| and JOSEPH GAGLIARDI, | : | |
| | : | |
| Defendants. | : | |

<u>**REPORT AND RECOMMENDATION**</u>

**I.    Introduction**

The court now considers defendant Joseph Gagliardi's ("Gagliardi") motion to

dismiss count IV of the complaint for failure to state a claim pursuant to Rule 12(b)(6)

For the reasons that follow, the court recommends defendant's motion be denied.

**II.    Procedural Background**

On April 28, 2010, the United States filed a complaint against multiple

defendants, including Gagliardi.[1]  Count IV of the complaint specifically raises common

law fraud, the sole claim against Gagliardi.[2]  On July 7, 2010, Gagliardi filed a motion to

dismiss count IV of the complaint for failure to state a claim under Rule 12(b)(6)[3] and,

on August 4, 2010, the United States filed its answering brief in opposition.[4]  Gagliardi

---

[1] D.I. 1.
[2] *Id.* at ¶ 79-95.
[3] D.I. 8.
[4] D.I. 14.

filed his reply brief on August 16, 2010.[5]

## III.    Facts[6]

This case arises from the sale of assets by the bankrupt estate, Medical Wind Down Holdings I ("MWDH I"), to defendant, Bacara Partners, LLC ("Bacara").  The individual defendants, Larry Manth ("Manth"), Michael Rosenblum ("Rosenblum), Victoria Tan ("Tan"), and the corporate defendant, Spinneret Financial Solutions, LLC ("Spinneret"), hold varying equity interests in Bacara.  Defendant Alfred Hahnfeldt ("Hahnfeldt") is the sole owner of Spinneret.  Gagliardi had been the Chief Financial Officer ("CFO") of record for MWDH I and held that position as of March 13, 2003.

On February 11, 2003, MWDH I and its subsidiaries[7] ("debtors") filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware.[8]  On March 13, 2003, the debtors filed asset schedules listing the current value of liquidated debts, including tax refunds, owed to each debtor as zero.  Gagliardi signed each of these schedules in his capacity as CFO.  Through a court approved sale on November 10, 2003, MWDH I sold substantially all of its assets and ceased conducting business.

On or around September 15, 2003, Gagliardi, who had been appointed Plan Administrator at the time, reviewed and executed MWDH I's corporate income tax Form 1120 for the 2002 tax year, which declared a loss in the amount of $72,441,457.00.

---

[5] D.I. 18.

[6] Unless otherwise indicated, all facts are taken from the complaint. *See* D.I. 1.

[7] MWDH I was dissolved no later than March 22, 2006 and was merged with MWDH III on that date as evidenced by the Articles of Merger.  MWDH III became the surviving entity.  Neither MWDH I nor MWDH III are parties to the complaint.

[8] The bankruptcy court later consolidated the administration of the various bankruptcy filings.

The form did not identify any qualifying Net Operating Loss ("NOL") for tax year 2002.

In 2004, Hahnfeldt, with whom Gagliardi had a previous business relationship, asked Gagliardi about the availability of MWDH I's unused claims for refund of federal income taxes.  Despite his concerns regarding Hahnfeldt's request, Gagliardi agreed to sell these claims to Bacara in exchange for $77,500.00.[9]  On September 8, 2005, almost two years after selling substantially all its assets in a court approved sale, MWDH I petitioned the bankruptcy court, under the direction of Gagliardi, seeking approval to sell its right, title and interest in certain assets to Bacara.

The sales agreement between Bacara, its partners, and MWDH I provided that Bacara was purchasing "all Claims . . . held by the Estate, including, without limitation, uncollected accounts receivable, deposits and refunds [and] copies of the books and records owned by the Estate and specifically relating to the Purchased Claims . . . ."[10] Among the items excluded from the sale, the agreement listed certain state claims or state tax refunds being pursued or considered by the bankrupt estate at the time of the agreement's execution.  The agreement did not exclude any federal claims or tax refunds.  In its petition for sale to the bankruptcy court, MWDH I represented that the assets beings sold had no material value.

By March 22, 2006, MWDH I ceased to exist and merged with MWDH III.  On August 18, 2006, Hahnfeldt executed and filed an amended federal corporate income tax return, Form 1120X, in the name of MWDH I and its subsidiaries.  Hahnfeldt

---

[9] D.I. 1 at ¶85 (indicating that Gagliardi was "confounded by Hahnfeldt's proposition because MWDH I had already used all of its NOLs and because there was 'nothing left to buy.'").
[10] D.I. 1, Ex. 3 at 1-2.

represented on that form that he was the CFO of MWDH I, a position he did not hold. Hahnfeldt also represented that, as a result of a NOL carry back incurred in tax year 2002 which resulted in a $728,207.00 overpayment of federal income taxes for tax year 1993, MWDH I was due a refund. The form did not advise the IRS that MWDH I had liquidated its assets, ceased business operations, and had been merged into MWDH III.

The IRS issued a refund to MWDH I on October 3, 2006. Gagliardi agreed to received the refund check from the United States Treasury at MWDH I's post office box in Florida. To facilitate the exchange, Hahnfeldt provided a self-addressed Federal Express envelope to an employee of Gagliardi. Acting on Gagliardi's instructions, Gagliardi's employee received an envelope from the United States Treasury, confirmed its contents, and forwarded the envelope to Bacara and its partners.

Bacara reported the income from the refund on Schedule D of its 2006 Form 1065 ("U.S. Return of Partnership Income"). According to the Schedules K-1 attached to that form, each of Bacara's partners received a distributive share.

The United States avers that the IRS first learned of Gagliardi's conduct as a result of another amended corporate tax return filed in 2007 on behalf of MWDH I for tax year 1994. The government maintains that Gagliardi acted fraudulently by failing to notify the IRS regarding Bacara's meritless refund claim and by forwarding Bacara's fraudulently obtained refund to Bacara and its partners.

## IV.    Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to

4

dismiss a complaint for failure to state a claim upon which relief can be granted.[11]  The

purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to

resolve disputed facts or decide the merits of the case.[12]  "The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims."[13]  A motion to dismiss may be granted only if, after "accepting all

well-pleaded allegations in the complaint as true, and viewing them in the light most

favorable to the plaintiff, plaintiff is not entitled to relief."[14]  While the court draws all

reasonable factual inferences in the light most favorable to a plaintiff, it rejects

unsupported allegations, "bald assertions," and "legal conclusions."[15]

    To survive a motion to dismiss, plaintiffs' factual allegations must be sufficient to

"raise a right to relief above the speculative level . . . ."[16]  Plaintiffs are therefore required

to provide the grounds of their entitlement to relief beyond mere labels and

---

[11] *See* Fed. R. Civ. P. 12(b)(6).

[12] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[13] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[14] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *In re Burlington*, 114 F.3d at 1420).

[15] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (rejecting "unsupported conclusions and unwarranted inferences") (citations omitted); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

[16] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

5

conclusions.[17]  Although heightened fact pleading is not required, a plaintiff must allege

"enough facts to state a claim to relief that is plausible on its face."[18]  A claim has facial

plausibility when a plaintiff pleads factual content sufficient for the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.[19]  Once

stated adequately, a claim may be supported by showing any set of facts consistent

with the allegations in the complaint.[20]  Courts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint, and matters of public

record when reviewing a motion to dismiss.[21]

## V.    Discussion

To state a claim for common law fraud under Delaware law, a plaintiff must plead

facts supporting the inference that (1) the defendant falsely represented or omitted facts

that the defendant had a duty to disclose; (2) the defendant knew or believed that the

representation was false or made the representation with a reckless indifference to the

truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4)

the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was

---

[17] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[18] *Twombly*, 550 U.S. at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[19] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

[20] *Twombly*, 550 U.S. at 563 (citations omitted).

[21] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) (citations omitted).

injured by its reliance.[22]

In his motion, Gagliardi maintains that plaintiff's claim fails as a matter of law, based on the failure to show two required elements.  First, Gagliardi contends that the United States did not plead facts supporting the inference that Gagliardi falsely represented or omitted facts that he had a duty to disclose.[23]  Second, Gagliardi argues that even if he misrepresented or omitted facts he was obligated to disclose, the United States failed to plead facts supporting the inference that the government justifiably relied on that misrepresentation or omission.[24]

A common law fraud claim invokes Federal Rule of Civil Procedure 9(b).[25]  Rule 9(b) requires complainants to "state with particularity the circumstances constituting fraud or mistake."[26]  This requirement is intended "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."[27]  Plaintiffs "may satisfy this requirement by pleading the 'date, place or time' of fraud," or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'"[28]

Despite the heightened pleading required by Rule 9(b), a court "must apply Rule

---

[22] *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1933).

[23] D.I. 8 at 7-11.

[24] *Id.* at 11-12.

[25] *See* Fed. R. Civ. P. 9(b).

[26] *In re Burlington Coat Factory Sec. Litigation*, 114 F.3d 1410, 1417-18 (3d Cir. 1997).

[27] *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004).

[28] *Id.* at 224 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

9(b) with some flexibility so that a party is not required to plead issues which may have been concealed by an adverse party."[29]  Courts must be sensitive that the application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud,"[30]  As a result "courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control."[31]  Despite this leniency, "even under a non-restrictive application of the rule, pleaders must allege that the necessary information lies within defendants' control, and their allegations must be accompanied by a statement of the facts upon which the allegations are based."[32]

### A. Sufficiency of the Complaint Regarding False Representation or Omission of Facts

Delaware recognizes three species of common law fraud:  (1) affirmative falsehoods, (2) active concealment, and (3) silence in the face of a duty to speak.[33]  To plead a case for common law fraud in Delaware, a plaintiff must first plead facts supporting the inference that the defendant falsely represented or omitted facts he or she had a duty to disclose.[34]  In its complaint, the United States asserts that Gagliardi actively concealed the true nature of the Bacara sale and the fraudulent tax return from the government and that Gagliardi's silence regarding the sale and Bacara's fraud

---

[29] *Mars Inc. v. JCM Am. Corp.*, 2006 WL 1704469, at *5 (D.N.J. June 14, 2006) (citing *Rolo v. City Investing Co. Liquidation Trust*, 155 F.3d 644, 658 (3d Cir. 1998)).

[30] *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628 (3d Cir. 1989) (quoting *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99-100 (3d Cir.1983)).

[31] *Id.* (citing *Saporito v. Combustion Eng'g, Inc.*, 843 F.2d 666, 675 (3d Cir. 1988)).

[32] *Id.* at 645

[33] *Metro Commc'n Corp. BVI v. Advanced MobleComm Tech. Inc.*, 854 A.2d 121, 143 (Del. Ch. 2004) (citing *Stephenson*, 462 A.2d at 1074).

[34] *Stephenson*, 462 A.2d at 1074.

breached Gagliardi's fiduciary duty to the IRS.

### 1. Active Concealment

With regard to the charge of active concealment, the United States' complaint alleges that Gagliardi, with knowledge of the true value of MWDH I's remaining assets, sold these worthless assets to Bacara for $77,500.00.  The complaint further provides that MWDH I and Gagliardi never consulted with the United States or any of its agencies regarding the sale and that neither the United States nor any of its agencies participated in the sale.  The government avers that although Gagliardi caused MWDH I to file a motion with the bankruptcy court for approval of the sale, he failed to disclose Bacara's fraudulent intent regarding the worthless assets in plain terms.  Plaintiff argues that this failure to disclose Bacara's intended use was a deliberate concealment of facts.  Further, the government purports that Gagliardi actively misled the IRS to believe that MWDH I had filed for a tax refund by agreeing to receive the refund check at MWDH I's Post Office box in Oldsmar, Florida.

### 2. Silence in the Face of a Duty to Speak

In an alternative argument, plaintiff also alleges that Gagliardi owed a fiduciary duty to the IRS and that he knowingly failed to warn the IRS about Bacara's fraudulent scheme in the face of a duty to speak.  According to the complaint, as of the date on which he signed Form 1120 for tax year 2002, Gagliardi had been appointed Plan Administrator for MWDH I's Chapter 11 bankruptcy.[35]  Plaintiff notes that Gagliardi, as

---

[35] Gagliardi challenges plaintiff's assertion that he was the Plan Administrator, and instead characterizes his role as a "representative" of the Plan Administrator.  At this phase of the proceedings, this is a distinction without a difference as Gagliardi asserts a factual, and not a legal, challenge. *See Fitzgerald v. Barnstable Sch. Comm.*, 129 S.Ct. 788, 792 (2009) ("Because this case comes to us on a motion to dismiss

Plan Administrator, owed fiduciary duties equivalent to a Chapter 11 trustee or debtor-in-possession.  Additionally, plaintiff argues that the Plan Administrator Agreement and Chapter 11 Plan of Reorganization created an independent fiduciary duty.  In his argument against the existence of a fiduciary duty owed to the IRS, Gagliardi does not challenge the existence of a fiduciary duty, but only argues that the duty is owed to the estate and not to individual creditors.[36]

In *In re Marvel Entertainment Group, Inc.*,[37] the Third Circuit found that the "appointment of a trustee is the installation of a court officer charged with fiduciary duties."[38]  In a Chapter 11 bankruptcy, a debtor-in-possession assumes the same fiduciary duties and obligations as an appointed trustee.[39]  "These obligations include '[o]pen, honest and straightforward disclosure to the Court and creditors.'"[40]  In opposition, Gagliardi argues that a trustee's duties are to the estate, and not to any one particular creditor.[41]  Gagliardi cites *In re Pinnacle Brands, Inc.*,[42] for the proposition that "[a] debtor's fiduciary duty is to maximize the value of the estate for distribution to creditors, not to minimize the exposure of an individual creditor while increasing the liability of the estate."[43]  In *Pinnacle*, the court found that although a proposed transaction may be in the best interests of a creditor, a trustee may not enter into such a

---

under Federal Rule of Civil Procedure 12(b)(6), we assume the truth of the facts as alleged in petitioners' complaint.").

[36] *See* D.I. 18 at 4-5.

[37] 140 F.3d 463 (3d Cir. 1998).

[38] *Marvel*, 140 F.3d at 474.

[39] *Id.*

[40] *Id.* (quoting *In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989)).

[41] *See* D.I. 18 at 5

[42] 259 B.R. 46 (Bankr. D. Del. 2001).

[43] *Pinnacle*, 259 B.R. at 54.

transaction where that transaction may increase the estate's liability.[44] *Pinnacle*, and other similar cases, are distinguishable from the instant case. Here, as the Third Circuit found in *Marvel*, Gagliardi, in his role as Plan Administrator, owed a duty of open, honest, and straightforward disclosure to the bankruptcy court and MWDH I's creditors, including the IRS. Gagliardi's obligations to MWDH I's creditors in no way presented a conflict of interest with his obligations to the estate and, as a result, *Pinnacle* is inapplicable.

Having established a duty of honest disclosure, the facts as pled in the complaint, demonstrate that Gagliardi did not notify the IRS about Bacara's scheme in the motion for sale, while agreeing to receive the refund check, and upon receipt of the refund check, forwarding it to Bacara.

## B. Sufficiency of the Complaint Regarding Gagliardi's Knowledge or Belief

The United States pled adequate facts supporting an inference that Gagliardi submitted a motion for sale to the bankruptcy court without clear indication of Bacara's intent to file a fraudulent claim and that this failure to adequately advise of Bacara's intent did, for a certain time period, prevent plaintiff from discovering the fraudulent claim. However, plaintiff does not allege any facts supporting an inference that this submission was done with knowledge or belief that the representation was false or misleading.

That Gagliardi sold worthless assets for some value does not demonstrate his knowledge of Bacara's intended fraud nor does it demonstrate that he meant to prevent

---

[44] *Id.* ("Although . . . the License Agreement would have been in the best interests of [the creditor], it is not clear that it would have been in the best interests of the estate.").

11

the discovery of Bacara's fraud.  In its brief, plaintiff argues that Gagliardi either knew of Bacara's intent or recklessly disregarded the fact that Bacara intended to procure funds from the IRS using the worthless claims.  Plaintiff argues that a "reasonable person can infer that an entity would not pay $77,500 for claims and not plan to pursue them."[45] Plaintiff's argument suggests that Bacara purchased only worthless federal tax claims and nothing else of potential value.  To the contrary, the purchase agreement provides that the sale included "all Claims . . . held by the Estate, including, without limitation, uncollected accounts receivable, deposits and refunds [and] copies of the books and records owned by the Estate and specifically relating to the Purchased Claims . . . ."[46] Without more, it is not reasonable to infer that a seller of claims knew or should have known that the purchaser would have filed a fraudulent claim extracted from the sale of "all Claims . . . held by the estate . . . ."

Plaintiff implies in its complaint, and argues in its brief, that Gagliardi and Hahnfeldt's prior professional relationship demonstrates Gagliardi's knowledge of Bacara's intended fraud when submitting the motion for sale.  In its brief, plaintiff alleges that on February 8, 2005, seven months before the sale of MWDH I's assets, Gagliardi and Hahnfeldt negotiated the sale of assets of another company (hereafter the "Baxter Sale") wherein Gagliardi agreed to sell NOL carry forwards, tax credit carry forwards, and capital loss carryovers and refunds for $58,500.00.  Unlike the MWDH I sale, however, the Baxter Sale specifically included the sale of refunds related to federal income, sales, or excise taxes and fees.[47]  Information suggesting that in a sales

---

[45] D.I. 14 at 12.
[46] D.I. 1, Ex. 3 at 1-2.
[47] D.I. 14, Ex. B at 1.

agreement shortly before the sale-at-issue, Gagliardi expressly included federal tax refund claims, but in a subsequent agreement disguised the sale with a catch-all term ("all Claims") may support an inference that Gagliardi had some knowledge of the Bacara's intent.  Unfortunately for plaintiff, this information is nowhere found in the complaint and its later disclosure during motion briefing does not fulfill Rule 9(b)'s requirement for particularity within the complaint.[48]

Concerning a second act of active concealment and/or failure to warn, the government avers that Gagliardi misled the IRS to believe that MWDH I filed the fraudulent tax refund by, first, agreeing to receive the refund check at MWDH I's post office box in Oldsmar, Florida and, second, by actually forwarding the refund check to Bacara.  Plaintiff argues that Gagliardi's compliance with Bacara's plan, and his previous dealings with Hahnfeldt, demonstrate his knowledge of, and complicity with, the fraudulent scheme.  As noted above, Gagliardi's previous dealings with Hahnfeldt do not comport with the requirements of Rule 9(b) because that information is nowhere contained in the complaint outside of a passing reference that Gagliardi and Hahnfeldt had a "prior professional relationship."

In contrast to plaintiff's allegations regarding the motion for sale, information that Gagliardi actually complied with Bacara's fraudulent scheme (by receiving, confirming,

---

[48] *Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984) ("The requirements of Rule 9(b) must be fulfilled in the complaint itself . . . . not . . . in memoranda of points and authorities . . . .") (citing *In re Equity Funding Corp. of Amer. Sec. Litig.*, 416 F. Supp. 161, n. 10 (C.D. Cal.1976)); *see also GL Indus. of Mich., Inc. v. Forstmann-Little*, 800 F. Supp. 695, 702 (S.D. Ind. 1991) ("The plaintiffs apparently have much of this information, as their response brief is filled with new allegations not found in the complaint.  Such allegations outside of the complaint will not satisfy Rule 9(b).") (citing *Beck v. Cantor, Fitzgerald & Co.*, 621 F. Supp. 1547, 1552 (N.D. Ill. 1985), abrogated on other grounds by *Teamsters Fund v. Angelos*, 762 F.2d 522 (7th Cir.1985)).

and then forwarding the refund check addressed to MWDH I) does support an inference that Gagliardi had knowledge of the fraudulent scheme.  As a result, the court finds that the complaint fails to allege facts supporting an inference that Gagliardi knowingly or recklessly submitted a misleading motion for sale.  However, the court also finds that the complaint incorporates sufficient facts supporting an inference that Gagliardi knowingly or recklessly agreed to receive and forward a fraudulently acquired refund check, and later did so without notifying or alerting the IRS, to whom he owed a duty of open, honest, and straightforward disclosure.

### C. Sufficiency of the Complaint Regarding Gagliardi's Intent to Induce the Plaintiff to Act or Refrain from Acting

In his motion, Gagliardi argues that although plaintiff asserts that he "had intent to induce the United States to issue the erroneous refund," plaintiff fails to explain the basis of this legal conclusion.  Accordingly, Gagliardi argues that this allegation is entitled to no weight under the Supreme Court's finding that "the tenet that a court must accept as true all allegations contained in a complaint is inapplicable to legal conclusions."[49]  Gagliardi characterizes the United States' allegation as a bare legal conclusion and argues that a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement.

In *Ashcroft v. Iqbal*, the Supreme Court found that although Federal Rule of Civil Procedure Rule 9 allows "[m]alice, intent knowledge, and other conditions of a person's mind [to] be alleged generally," the term "generally" is relative and must be read in light of the particularity requirement applicable to fraud or mistake.[50]  The Court stated that

---

[49] *Iqbal*, 129 S. Ct. at 1949.
[50] *Id.* at 1954.

Rule 9 excuses a party from pleading discriminatory intent under an elevated pleading standard, however it does not excuse a party from Rule 8's requirement of a short and plain statement of the claim showing that the pleader is entitled to relief.[51]  In *Bell Atlantic Corp. v. Twombly*, the Court found that the Rule 8 "short and plain statement" requirement does not require "detailed factual allegations," but does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[52] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[53]  In determining whether a complaint states a plausible claim, a reviewing court must accept a complaint's allegations as true and must draw on its experience and common sense.[54]

Plaintiff's complaint alleges that Gagliardi had knowledge or belief that MWDH I's federal income tax claims were valueless, but nevertheless agreed to receive a refund check from the IRS for those claims.  Upon receipt of the check, Gagliardi, via his agent, opened the envelope containing the check, confirmed its contents, and forwarded the same to Bacara in an envelope provided to him from Hahnfeldt.  Plaintiff again argues that this compliance with Bacara's fraudulent scheme evidences both Gagliardi's knowledge of the scheme and his intent to defraud the government.  Accepting the allegations within the complaint as true, the court is inclined to agree with plaintiff.  The pleaded facts demonstrate that, at some moment prior to the check's arrival, Gagliardi agreed to receive the check from the IRS and forward it to Bacara. Gagliardi then did

---

[51] *Id.*
[52] *Twombly*, 550 U.S. at 570.
[53] *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 556).
[54] *Id.*

indeed receive the check made payable to MWDH I, the estate for which he was Plan Administrator, confirmed the check's value, and forwarded that check to Bacara without inquiry or notice to the IRS. These facts support the inference that Gagliardi intended to conceal the true nature of the check's destination from the IRS. The court finds that this inference is more than a conceivable possibility of fraudulent intent and rises to a plausible possibility. As a result, the court also finds that the facts, as pled in the complaint, support an inference that Gagliardi intended to induce the IRS from acting or refrain from acting.

### D. Sufficiency of the Complaint Regarding Plaintiff's Justifiable Reliance

Gagliardi finally alleges that even if he knowingly or reckless misled the IRS with the intent to induce the IRS from acting or refrain from acting, plaintiff's claim must still fail because it cannot, as a matter of law, establish justifiable reliance on the alleged misrepresentations. Gagliardi argues that in 2005, MWDH III, the entity into which MWDH I was merged, served the bankruptcy court and the IRS with the Bacara Sale Pleadings, including a notice setting forth the date and time of the hearing and the deadline to object to the motion for sale. Gagliardi contends that since the motion for sale expressly stated the debtors' belief that the assets being sold to Bacara had no material value, it is unreasonable for the IRS to have relied on Bacara's fraudulent tax filing because the motion for sale and the tax filing contained directly contradictory information. Gagliardi asserts that, upon receipt of the fraudulent tax return, the IRS had an obligation to conduct an inquiry into the validity of the claim before issuing the refund, and its failure to do so causes the fraud claim to fail as a matter of law.

Gagliardi cites to two Delaware cases for his proposition that the IRS had

information regarding the actual value of the assets and that this information provided actual or constructive notice which contradicts information in the amended tax return.  In *Darnell v. Myers*,[55] a home purchaser brought an action for misrepresentation and mutual mistake against the seller.[56]  The plaintiffs alleged that the seller misrepresented the condition of the home and sought rescission of the purchase agreement.[57]  The plaintiffs argued that, in a property condition report, the seller stated that she was unaware of "any water leakage, accumulation, or dampness within [the home's] basement or crawl space."[58]  The court found that the seller subsequently provided the plaintiffs with a note describing a newly installed water pump to remove water in the crawl space, and the plaintiffs' home inspector authored a report noting a "major deficienc[y]" requiring correction of "water [and] moisture in [the] crawl area."[59]  The court found that the plaintiffs' reliance on the seller's initial disclosure was unreasonable in light of the later disclosures.[60]

In *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, the Delaware Court of Chancery found that a sophisticated investor bargained for, and received, specific contractual inspection rights in a venture capital agreement and, despite numerous warnings of corruption and concern related to the project, failed to exercise those rights.[61]  In an action for active concealment, the court held that, because of those warnings and the plaintiff's failure to exercise its inspection rights, the

[55] 1998 WL 294012 (Del. Ch. May 27, 1998).
[56] *Darnell*, 1998 WL 294012, at *1.
[57] *Id.*
[58] *Id.*
[59] *Id.* at *2.
[60] *Id.* at *6.
[61] *Metro*, 854 A.2d at 151.

plaintiff could not justifiably rely on another investor's assurances of no wrongdoing.[62]

The facts in the instant case are not analogous to the cited cases. In *Darnell* and *Metro*, the plaintiffs had actual or constructive information that directly contradicted the alleged misrepresentations. Here, Gagliardi purports that "notice" was provided in the motion for sale. According to the complaint, Gagliardi, either intentionally or accidentally, used language that disguised the sale of worthless federal tax claims as "all Claims . . . held by the Estate, including, without limitation, uncollected accounts receivable, deposits and refunds [and] copies of the books and records owned by the Estate and specifically relating to the Purchased Claims . . . ."[63] The court finds that this language is insufficient to put the IRS on notice that a later amended tax return, purportedly filed by MWDH I's CFO, and requesting the refund check to be sent to MWDH I's address may in fact be fraudulent. As a result, the court finds that the facts, as pled in the complaint, support an inference that plaintiff's reliance on Gagliardi's action or inaction was justifiable.

### D. Sufficiency of the Complaint Regarding Plaintiff's Injury

Since Gagliardi does not challenge the sufficiency of the complaint regarding plaintiff's injury, the court will not address this issue.

## VI. Conclusion

The court finds that the facts, as pled in the complaint, support an inference that Gagliardi owed a duty of open, honest and straightforward disclosure to the IRS. Although the complaint supports an inference that Gagliardi withheld the true nature of

---

[62] *Id.* at 151-52.
[63] D.I. 1, Ex. 3 at 1-2.

the Bacara sale from the bankruptcy court and the IRS, plaintiff has not pled sufficient facts to suggest that Gagliardi knowingly or recklessly made these representations. However, the complaint does allege adequate facts inferring that Gagliardi knowingly or recklessly misled the IRS to believe that MWDH I filed the amended tax return with the intent to induce the IRS to act or refrain from acting.  The court also finds that the complaint alleges sufficient facts suggesting the IRS justifiably relied on Gagliardi's action or inaction.

### ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, I recommend that:

1. Defendant's motion to dismiss the complaint (D.I. 7) be DENIED.

2. This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.Del.LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).  The objections and response to the objections are limited to ten (10) pages each.

The parties are directed to the court's standing Order in Non Pro Se matters for Objections Filed under Fed. R. Civ. P. 72, dated November 16, 2009, a copy of which is available on the court's website, www.ded.uscourts.gov.

Dated: January 10, 2011                    /s/ Mary Pat Thynge_____
                                                          UNITED STATES MAGISTRATE JUDGE